**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEPHANIE TIONGCO, | |
| Plaintiff, | CIVIL ACTION NO. 3:14-CV-1405 |
| v. | (JUDGE CAPUTO) |
| SOUTHWESTERN ENERGY PRODUCTION COMPANY, | |
| Defendant. | |

## MEMORANDUM

Presently before the Court is a Motion for Summary Judgment (Doc. 24) filed by Defendant Southwestern Energy Production Company ("SEPCO"). In her Complaint (Doc. 1), Plaintiff Stephanie Tiongco asserts that SEPCO's drilling and gas exploration activities amounted to a non-trespassory invasion interfering with the use and enjoyment of her private property and therefore constituted a private nuisance. Additionally, Plaintiff asserts a negligence claim against Defendant and seeks both damages and injunctive relief. In its Motion for Summary Judgment, Defendant argues that as a matter of law Plaintiff cannot prove that Defendant was the cause of an actionable private nuisance or acted negligently in conducting its drilling and gas exploration activities. Because genuine issues of material fact exist as to whether its activities constituted a private nuisance, Defendant's Motion for Summary Judgment with respect to the private nuisance claim will be denied. Because Plaintiff concedes that she is no longer pursuing a negligence claim, Defendant's Motion for Summary Judgment with respect to the negligence claim will be granted. And because Plaintiff no longer seeks injunctive relief, the Court will deny as moot Plaintiff's request for a permanent injunction.

### I. Relevant Factual Background

The facts presented in the summary judgment record, viewed in the light most

favorable to Plaintiff, are as follows:

Plaintiff Stephanie Tiongco owns and lives in a home adjacent to State Route 492 in New Milford, Pennsylvania. (Def.'s Statement of Undisputed Facts ("DSUF") ¶ 1, Doc. 26; Pl.'s Statement of Undisputed Facts ("PSUF") ¶ 1, Doc. 28.) Plaintiff has owned this property since 2007. (Tiongco Dep. 38:1-10, Doc. 27-1.) In addition to residing at this location, Plaintiff also uses the land for recreational and commercial purposes: Plaintiff raises alpacas and creates and sells dolls made out of her alpacas' hair. (Compl. 1-2, Doc. 1; Tiongco Dep. 32:9-15, 38:19-39:3.) In 2011, Plaintiff entered into an oil-and-gas lease with Defendant, under which Plaintiff has received a bonus payment and royalties from Defendant in exchange for allowing Defendant to explore, develop, produce, and market oil and gas from the unit of which her property is a part. (*See* DSUF ¶ 3; PSUF ¶ 3; Tiongco Dep. 35:25-36:12, 123:21-125:11; Def.'s Answer Tab A ¶ 1, Doc. 10-1.) Although the lease agreement is silent on the matter, when Defendant's salesperson was soliciting Plaintiff to sign the lease agreement he told Plaintiff that there would not be any drilling within miles of her property due to the fact that a water source was located near her residence. (Tiongco Dep. 144:7-15; 148:4-21.)

However, beginning in 2011 Defendant engaged in drilling activities and operated several natural gas wells ("the wells") located less than a quarter of a mile from Plaintiff's home. (Compl. ¶¶ 12, 14; Tiongco Dep. 51:7-19.) Plaintiff alleges and testified in a deposition that the various drilling-related activities created "excessive noise, light, and vibrations" that interfered with the use and enjoyment of her private property. (*See, e.g.*, Tiongco Dep. 42:22-43:9, 43:18-44:14, 47:18-23, 78:15-81:23, 141:15-20 (noise); *id.* at 43:18-20, 82:16-85:9 (light); *id.* at 43:18-20, 55:23, 93:14-95:21 (vibrations); *see also* Compl. ¶¶ 16, 20-23, 26-27.) Specifically, Plaintiff testified that the level of noise from these activities sometimes rose to the level of a "jet engine" (Tiongco Dep. 79:8-9), the construction lighting illuminated her house "24/7" for a period of approximately eight weeks (*id.* at 82:16-84:9), and the vibrations from the drilling activities would wake her up in the night and "shake the whole house" (*id.* at 94:9-13, 95:21). Additionally, Plaintiff testified that Defendant's conduct

created a "dirt and dust problem" that forced Plaintiff to power wash her house four times. (*Id.* at 105:8-23.) Furthermore, due to the noise from Defendant's drilling activities, Plaintiff testified that she was unable to continue her home gardening pursuit and unable to enjoy her back porch. (*Id.* at 146:5-147:11.) As a result of this activity, Plaintiff testified that she was unable to sleep, required prescription Xanax, and her work suffered. (*See id.* at 42:22-24, 43:24-25, 103:1-6, 141:6-142:9.) These conditions persisted at a high level of disruption for over one year (*see id.* at 60:15-25), but have since been reduced to "occasional" truck access and light construction traffic (*id.* at 58:19-59:20).

On July 21, 2014, Plaintiff filed a Complaint against Defendant SEPCO alleging that Defendant is liable for private nuisance and negligence, and sought money damages and injunctive relief. (Compl. ¶ 88; DSUF ¶ 2; PSUF ¶ 2.) Plaintiff subsequently abandoned her negligence claim and request for injunctive relief, and is proceeding solely on her private nuisance claim. (DSUF ¶ 20; PSUF ¶ 20; *see also* Pl.'s Br. in Opp'n 2, Doc. 27.) Plaintiff admits that a majority of the allegedly disruptive activities have now ceased (*see* Tiongco Dep. 57:12-18, 59:16-61:15, 133:18-136:14), and that she personally does not consider the current drilling-related activities to constitute a nuisance (*id.* at 61:1-9).

## II. Legal Standard

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). As such, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 105 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under

the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70 (3d Cir. 1996). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 247-48. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When considering whether there are genuine issues of material fact, the court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In order to prevail on a motion for summary judgment, the nonmoving party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d

4

265, 270 (3d Cir. 2007) (citing FED. R. CIV. P. 56(e)). Although the nonmoving party's evidence may be either direct or circumstantial, and "need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## B.     Private Nuisance

Pennsylvania has adopted the Restatement (Second) of Torts approach for determining the existence of a private nuisance. *See Butts v. Sw. Energy Prod. Co. ("SEPCO")*, 2014 WL 3953155, at *3 (M.D. Pa. Aug. 12, 2014). Under that approach:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
> a. intentional and unreasonable, or
> b. unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

*Kirpiak v. Russo*, 676 A.2d 270, 272 (Pa. Super. Ct. 1996) (quoting RESTATEMENT (SECOND) OF TORTS § 822 (1977)). An "invasion" is actionable under the doctrine of nuisance only if it causes "significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 821F).  A "significant harm" must involve more than "slight inconvenience or petty annoyance," and it must constitute a "real and appreciable interference with the plaintiff's use or enjoyment of his land." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 821F cmt. c). The standard for determining whether an alleged invasion is "significant" is the "standard of normal persons or property in the particular locality. If normal persons living in the community would regard the

invasion in question as definitely offensive, seriously annoying or intolerable, then the invasion is significant." *Umphred v. VP Auto Sales & Salvage, Inc.*, 2015 WL 6965725, at *11 (Pa. Super. Ct. June 24, 2015) (quoting RESTATEMENT (SECOND) OF TORTS § 821F cmt. d). "It is for the trier of fact to determine whether there was a significant invasion of [a party's] enjoyment of [her] property, and, if such an invasion existed, whether the invasion was unreasonable." *Kembel v. Schlegel*, 478 A.2d 11, 15 (Pa. Super. Ct. 1984); *see also Butts*, 2014 WL 3953155, at *3.

In addition to showing that an invasion produced significant harm, a private-nuisance claimant must also demonstrate that the invasion was effectuated by either intentional and unreasonable conduct, or unintentional conduct that is otherwise actionable under the rules controlling liability for negligence or recklessness, or for abnormally dangerous conditions or activities. *See Kirpiak*, 676 A.2d at 272. A party commits an "intentional" invasion when he either "act[s] for the purpose of causing it or know[s] that it is resulting or is substantially certain to result from his conduct." RESTATEMENT (SECOND) OF TORTS § 825 cmt. c; *see also McQuilken v. A&R Dev. Corp.*, 576 F. Supp. 1023, 1030 (E.D. Pa. 1983) (citing *Burr v. Adam Eidemiller, Inc.*, 126 A.2d 403 (Pa. 1956)). A party generally possesses the requisite level of intent if he knows or is substantially certain "that the condition or activity is causing harm to another's interest in the use and enjoyment of land." *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 691 N.W.2d 658, 672 (Wis. 2005).

When a defendant begins a course of conduct without knowing that his conduct is invading another's use and enjoyment of land, but is subsequently put on notice that such an invasion is resulting and does not abate his activities, further invasions may be considered "intentional." *Smith v. Jersey Cent. Power & Light Co.*, 24 A.3d 300, 309 (N.J. Super. Ct. App. Div. 2011); *see also Morgan v. Quailbrook Condo. Co.*, 704 P.2d 573, 577 (Utah 1985) ("To sustain a finding of an intentional tort under section 825, then, it is sufficient to demonstrate that the actor maintained the condition after he knew that it was

causing an invasion of another's interest in the use and enjoyment of land."); RESTATEMENT (SECOND) OF TORTS § 825 cmt. d (explaining that in cases involving continuing or recurrent invasions, the "first invasion resulting from the actor's conduct may be either intentional or unintentional; but when the conduct is continued after the actor knows that the invasion is resulting from it, further invasions are intentional").

## II. Discussion

Defendant bases its Motion for Summary Judgment on Plaintiff's private nuisance claim on three grounds. First, Defendant argues that the governing Susquehanna County noise and light ordinances establish the proper standards under which Defendant's alleged nuisance-causing activities should be evaluated. Because in her deposition Plaintiff agreed with Defendant's counsel that such ordinances "might be a good way" of evaluating what the community deems to be excessive output levels and therefore a potential nuisance, Defendant contends that Plaintiff has "conceded" that the standards dictated in the ordinances establish the proper measure of what constitutes a "significant invasion." (Def.'s Br. in Supp. 9-11, Doc. 25.) And because Plaintiff did not measure Defendant's noise or light output levels quantitatively, Defendant argues that she cannot prove that SEPCO's activities violated the ordinances and thus cannot prove that these activities amounted to a significant invasion. (*Id.* 11-12.) Second, Defendant contends that the record fails to establish that SEPCO's employees and equipment caused the complained-of noise, light, and vibrational harms. (*See id.* at 12-14.) Finally, Defendant asserts that Plaintiff's deposition testimony does not demonstrate that Defendant acted intentionally, as is required under the prevailing standard for finding a private nuisance. (*See* Def.'s Reply Br. 4-5, Doc. 29.) For the reasons detailed below, Defendant's arguments prove unpersuasive.

**A. The County Ordinances Are Not Dispositive of What Constitutes a Significant Invasion**

Defendant correctly argues that, under Pennsylvania law, courts apply the

"community standard" to determine whether something constitutes a significant invasion that might give rise to a private nuisance–that is, whether "normal persons living in the community would regard the invasion in question as definitely offensive, seriously annoying or intolerable. . . ." *Karpiak v. Russo*, 676 A.2d 270, 273 (Pa. Super. Ct. 1996). But Defendant's attempt to elicit a "concession" from Plaintiff during her deposition that Susquehanna County light and sound ordinances are synonymous with the "community standard" is misplaced.

During Plaintiff's deposition, Defendant's counsel asked Plaintiff if she agreed with him that "if Susquehanna County did have a noise ordinance, that might be a good way of looking to see what people in Susquehanna County regard as excessive noise?" (Tiongco Dep. 119:1-4.) After asking counsel to repeat the question, Plaintiff responded in the affirmative. (*Id.* at 119:5-12.) Defendant's counsel subsequently advanced an almost identical line of questioning with respect to a light ordinance, and Plaintiff again responded in the affirmative. (*Id.* at 123:1-10.) On this basis, Defendant advances an argument premised on the notion that, because Susquehanna County has enacted ordinances governing commercial light and sound levels, and because in her deposition testimony Plaintiff concurred with Defendant's counsel that standards set by local ordinances "might be" or "would be" "good indicator[s]" of what the community deems to be excessive light and noise, as a matter of law the County ordinances are the governing standards for what constitutes a significant invasion in this particular case. (*See* Def.'s Br. in Supp. 9-10, Doc. 25.) Defendant argues that Plaintiff must therefore demonstrate quantitatively that Defendant's activities exceeded the levels set by these ordinances in order to prove that Defendant's activities amounted to a significant invasion. And because Plaintiff did not quantitatively measure Defendant's output levels, Defendant contends that it is entitled to judgment as a matter of law on Plaintiff's nuisance claim. This, however, is not the law.

Under Pennsylvania law, a "private nuisance [may] flow[] from the consequences of an otherwise lawful act." *Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal*

8

*Practical Knowledge*, 102 A.3d 501, 508-09 (Pa. Super. Ct. 2014). As such, "lawful activities may be enjoined where they unreasonably interfere with another's property rights." *Id.* at 509; *see, e.g.*, *Firth v. Scherzberg*, 77 A.2d 443, 446-47 (Pa. 1951) (finding a nighttime trucking operation constituted a nuisance despite being permitted as a nonconforming use under the ordinance); *Clark v. Fritz*, 2016 WL 2625235, at *6 (Pa. Super. Ct. May 6, 2016) (concluding that it did not matter whether the defendants complied with the standards established by local ordinances in operating their nuisance-causing furnace because "it is well-settled that a private nuisance often flows from the consequences of an otherwise lawful act"). Here, Defendant's attempt to advance the pertinent County ordinances as dispositive standards for what constitutes a significant invasion is misplaced. Whether the noise, light, and/or vibration levels of which Plaintiff complains exceeded the limits prescribed by ordinance is not determinative of whether the same activities constitute a significant invasion giving rise to a private nuisance. This is true regardless of whether Plaintiff truly agreed with Defendant's counsel that the County ordinances provide a proper measure of the community standard. Defendant's conduct could comply with the County ordinances and nevertheless be found to constitute a private nuisance under the community standard. *See Clark*, 2016 WL 2625235, at *6. The private nuisance inquiry is not limited to whether Defendant's conduct violated an ordinance governing noise or light output levels; the question is whether Defendant's conduct constituted a significant and unreasonable invasion of Plaintiff's use and enjoyment of her property. *See Kembel v. Schlegel*, 478 A.2d 11, 15 (Pa. Super. Ct. 1984). Defendant's compliance or noncompliance with these County ordinances does not necessarily answer this question.

Notably, in a separate case in which Defendant advanced a similar argument at the summary judgment stage, the court correctly found that it was not necessary for a plaintiff to proffer objective measurements demonstrating that complained-of conduct constituted a private nuisance in order to survive a motion for summary judgment. *See Butts v. SEPCO*, 2014 WL 3953155, at *4 (M.D. Pa. Aug. 12, 2014). In *Butts*, SEPCO

9

argued that in order for the plaintiffs' private nuisance claim to survive summary judgment, the plaintiffs had to provide either expert testimony or demonstrate quantitatively that the light and sound stemming from its drilling activities went beyond the levels permitted under the governing Susquehanna County ordinances. *See id.* The court, however, correctly concluded that because the plaintiffs testified in their depositions that the noise and light were "significant and seriously annoying . . . . [such] testimony alone is sufficient to defeat a motion for summary judgment" because it established contested issues of material fact. *Id.* at *3. Presently, Plaintiff has also testified that Defendant's drilling activities significantly disrupted the use and enjoyment of her land. (*See, e.g.*, Tiongco Dep. 43:18-44:2.) At trial, Defendant may of course argue that its conduct was not significant or unreasonable by advancing the standards set forth in the ordinances in support of its position, "but such arguments turn on contested issues of fact and cannot provide the basis for summary judgment." *Butts*, 2014 WL 3953155, at *4.

Accordingly, the Court will not grant Defendant's Motion for Summary Judgment on Plaintiff's private nuisance claim simply because Plaintiff has not proven quantitatively that Defendant's noise and/or light output violated the levels prescribed by the County ordinances.

**B. Plaintiff Has Produced Sufficient Evidence Demonstrating Defendant SEPCO Was the Legal Cause of the Private Nuisance**

Defendant also argues that Plaintiff offered "no evidence that SEPCO employees were in fact responsible for the noise, light, and vibrations she alleges." (Def.'s Reply Br. 6, Doc. 29.) As such, Defendant contends that Plaintiff "cannot identify SEPCO as the source of any of the things she claims to be nuisances," and her case must therefore fail for a lack of causation. (*Id.* at 9.) The Court disagrees with this argument.

Pennsylvania courts recognize that a party may be liable "for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land." *Diffenderfer v. Staner*, 722 A.2d 1103, 1109 (Pa. Super. Ct.

1998) (quoting RESTATEMENT (SECOND) OF TORTS § 822)). Generally, in order for there to be an actionable nuisance, the defendant's conduct must be the natural and proximate cause of the injury. *See Bellflower v. Pennise*, 548 F.2d 776, 778 (8th Cir. 1977). A defendant may be "subject to liability for a nuisance caused by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on." RESTATEMENT (SECOND) OF TORTS § 834; *see Diess v. Pa. Dept. of Transp.*, 935 A.2d 895, 906 (Pa. Commw. Ct. 2007) ("In order to constitute the legal cause of an invasion of their interest, the [plaintiffs] must plead facts showing that [defendant's] conduct was a substantial factor in causing the harm to the [plaintiffs'] interests."). When there is reasonable doubt as to whether the defendant's conduct was a substantial factor in bringing about the alleged harm, "the question is for the trier of fact." RESTATEMENT (SECOND) OF TORTS § 834 cmt. d.

Plaintiff testified that she purchased and began to live on her current parcel of land in 2007. (Tiongco Dep. 38:1-39:12.) It is undisputed that Plaintiff entered into the oil-and-gas lease agreement that gave rise to the drilling activities with SEPCO in 2011. (*Id.* at 36:3-13, 91:21-92:1; *see also* Def.'s Answer Tab A, Doc. 10-1 (listing October 6, 2011 as the date the lease agreement was made).) Prior to entering into this agreement in 2011, Plaintiff had no experience with the oil-and-gas industry and had not suffered any harmful effects from an alleged nuisance. (Tiongco Dep. 36:7-18, 37:22-25, 55:1-11; *see also* Compl. ¶¶ 7-11.) But subsequent to entering the lease agreement with SEPCO, Plaintiff testified that she began to experience the complained-of effects. (*See, e.g.*, Tiongco Dep. 55:1-11, 103:1-6, 110:14-20.) The plain language of the lease agreement grants SEPCO, *inter alia*, "the right of ingress and egress on the leased premises or lands pooled or utilized therewith, along with such as rights as may be reasonably necessary to conduct operations for exploring, developing, producing, storing, and marketing Oil and Gas Substances. . . ." (Def.'s Answer Tab A. ¶ 1.) The lease agreement explicitly denotes SEPCO, and only SEPCO, as the company that would be conducting drilling-related activities with respect to Plaintiff's property. (*See id.* Tab A. ¶¶ 1, 5.) The fact that the

record indicates that Plaintiff never suffered from excessive noise, light, and vibrations prior to entering the lease agreement with Defendant SEPCO, coupled with the fact that the lease agreement specifically named Defendant SEPCO as the lessee permitted to conduct drilling-related activities, evidence that Defendant was the legal cause of the alleged invasion.

Additionally, Plaintiff's deposition testimony further establishes sufficient evidence from which a reasonable juror could deduce causation. Plaintiff testified that she observed trucks marked with SEPCO's company logo coming to-and-from the property upon which the drilling activities occurred. (*See* Tiongco Dep. 47:13-23, 58:4-13, 81:6-15.). Moreover, Plaintiff testified that she saw a sign advertising SEPCO's company logo at the end of the access road leading to the well pads, further indicating that SEPCO was substantially involved with the complained-of drilling activities. (*See id.* at 56:9-57:3, 57:24-58:3.) And Plaintiff also testified that she witnessed SEPCO employees driving on and off the road near her home on the way to the drilling site. (*See id.* at 107:10-13.) Irrespective of the lease agreement, Plaintiff's deposition testimony establishes a genuine issue of material fact as to whether SEPCO was the source of the allegedly harmful activities. *See Butts v. SEPCO*, 2014 WL 3953155, at *5 (M.D. Pa. Aug. 12, 2014) (citing *Roth v. Cabot Oil & Gas Corp.*, 919 F. Supp. 2d 476, 483 (M.D. Pa. 2013) (finding that at the summary judgment stage plaintiffs "lay, sensory observations . . . formed an independent and sufficient basis for establishing causation"); *Hughes v. Emerald Mines Corp.*, 450 A.2d 1, 6 (Pa. Super. Ct. 1982) (finding sufficient evidence from which a reasonable juror could deduce causation based on circumstantial evidence and witness observations).

Notably, Defendant has not offered any evidence suggesting that SEPCO was not in fact the legal cause of the activities of which Plaintiff complains, but instead attempts to demonstrate that Plaintiff is unable to meet her burden of proving causation. Although Plaintiff will ultimately bear this burden at trial, her deposition testimony and the parties' lease agreement are the only evidence in the record concerning causation, and the Court

finds this evidence sufficient to survive summary judgment on this issue. *Cf. Butts*, 2014 WL 3953155, at *6. Defendant's Motion for Summary Judgment based on insufficient evidence of causation will therefore be denied.

## C. Plaintiff Has Produced Sufficient Evidence for a Reasonable Juror to Conclude Defendant Acted Intentionally

Lastly, in support of its Motion for Summary Judgment with respect to Plaintiff's private nuisance claim, Defendant argues that Plaintiff cannot demonstrate that Defendant acted "intentionally" as is required for liability to attach. *See Kirpiak v. Russo*, 676 A.2d 270, 272 (Pa. Super. Ct. 1996) (quoting RESTATEMENT (SECOND) OF TORTS § 822). Because Plaintiff conceded that she is not pursuing her independent negligence claim, Defendant contends that Plaintiff's only available theory of private nuisance is one grounded in "intentional and unreasonable" conduct.[1] (*See* Def.'s Reply Br. 4-5, Doc. 29.) And since there is no evidence to support a finding that it acted intentionally, Defendant asserts that summary judgment must be granted in its favor. The Court disagrees.

In order to be liable for a private nuisance, a party's conduct must invade another's interest in the use and enjoyment of land, and the invasion must be either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities. *Kirpiak*, 676 A.2d at 272. Count I of Plaintiff's Complaint alleges a claim for intentional private nuisance. (*See* Compl. ¶¶ 31-37, Doc. 1.) Count II of Plaintiff's Complaint alleges a separate and independent negligence claim, but Plaintiff expressly conceded that she is not pursuing that cause of action. (*See* Pl.'s Br. in Opp'n 2, Doc. 27.) Plaintiff has therefore admitted that she is not pursuing a private nuisance claim based on

---

[1] Plaintiff's Brief in Opposition and statements made by Plaintiff's counsel during her deposition explicitly acknowledged that Plaintiff is no longer pursuing a negligence claim and is not seeking injunctive relief or damages for physical property damage or the ill health of her alpacas. (*See* Pl.'s Br. in Opp'n 2, Doc. 27; Tiongco Dep. 3:9-8:19.)

13

unintentional conduct: she conceded that she is no longer attempting to prove that Defendant acted negligently or recklessly, and her Complaint never alleged that Defendant engaged in an abnormally dangerous activity. *See* RESTATEMENT (SECOND) OF TORTS § 822 cmt. c (explaining that in order to be found liable for an unintentional private nuisance, a defendant must be found to have engaged in "liability-forming conduct," that is, to have acted negligently or recklessly, or to have engaged in an abnormally dangerous activity); *cf. Ely v. Cabot Oil & Gas Co.*, 2014 WL 7508091, at *18 (M.D. Pa. Apr. 21, 2014) (denying defendant's motion for summary judgment on plaintiff's private nuisance claim because, unlike the case at hand, the plaintiff offered sufficient evidence demonstrating the defendant breached a duty of care). Accordingly, because Plaintiff admitted that she is not attempting to prove that Defendant is liable under a theory of negligence or recklessness and never alleged that Defendant engaged in an abnormally dangerous activity, her only live claim is for a private nuisance based on intentional conduct. (*See* Compl. Count I.)

In order for a party to act intentionally in the context of a private nuisance, he must either (a) act for the purpose of causing the invasion, or (b) know that the invasion is resulting or is substantially certain to result from his conduct. *See Diess v. Pa. Dept. of Transp.*, 935 A.2d 895, 906 (Pa. Commw. Ct. 2007) (citing RESTATEMENT (SECOND) OF TORTS § 825). A private nuisance is therefore based on intentional conduct when a defendant "has knowledge that his otherwise legal enterprise is causing harm or is substantially certain to cause the invasion at issue." *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 691 N.W.2d 658, 672 (Wis. 2005) (citing RESTATEMENT (SECOND) OF TORTS § 825). As further illustrated in the governing Restatement:

> It is the knowledge that the actor has at the time he acts or fails to act that determines whether the invasion resulting from his conduct is intentional or unintentional. It is not enough to make an invasion intentional that the actor realizes or should realize that his conduct involves a serious risk or likelihood of causing the invasion. He must either act for the purpose of causing it or know that it is resulting or *is substantially certain to result from his conduct*.

14

RESTATEMENT (SECOND) OF TORTS § 825 cmt. c (emphasis added).

Upon review of the record, the Court finds that a genuine issue of material fact exists as to whether Defendant's conduct was "intentional." First, it should be noted that nothing in the record supports a finding that Defendant acted with the "purpose" of causing an invasion. To the contrary, Plaintiff and Defendant entered into an oil-and-gas lease which specifically contemplated Defendant engaging in drilling-related activities. The record makes clear that Defendant acted with the purpose of pursuing its interests in exploring, discovering, and producing oil and gas, not for committing an invasion of Plaintiff's use and enjoyment of her land. As such, based on the record no reasonable juror could conclude that Defendant acted with the purpose to invade Plaintiff's use and enjoyment of her land.

However, there is sufficient evidence in the record to allow a reasonable juror to conclude that Defendant knew, or was substantially certain, that its activities were nevertheless invading Plaintiff's use and enjoyment of her property. Although it appears that Pennsylvania courts have not conducted an in-depth inquiry into what constitutes "intentional" conduct in the context of private nuisance, some state courts which have adopted the same Restatement sections governing private nuisance as Pennsylvania have held that "intentionality" refers to a defendant's knowledge that its conduct was invading the use and enjoyment of one's land. *See, e.g.*, *Pub. Serv. Co. of Colo. v. Van Wyk*, 27 P.3d 377, 394 (Colo. 2001) ("[A] defendant must intend to create the unreasonable invasion interfering with the use and enjoyment of the plaintiff's property, or know that the invasion interfering with the use and enjoyment of the plaintiff's property will result from his conduct."). Conversely, some courts have concluded that the test for intentionality is simply whether "the creator of the condition intends the act that brings about the condition." *E.g.*, *Keeney v. Town of Old Saybrook*, 676 A.2d 795, 810 (Conn. 1996). Regardless of whether either test is in fact the prevailing standard under Pennsylvania law, the Court is mindful of the illustrations laid out in the governing

15

Restatement, which make clear that one need not intend to harm another party in order to be liable for an intentional private nuisance; the nuisance-causing party need only know, or be substantially certain, that its actions will significantly interfere with the other party's use and enjoyment of her land. *See* RESTATEMENT (SECOND) OF TORTS § 825 illus. 2; *see also id.* cmt. c (explaining that an invasion is intentional when "the actor knowingly causes [it] in the pursuit of a laudable enterprise without any desire to cause harm").

    Plaintiff's deposition testimony enumerates several instances from which a reasonable juror could infer that Defendant knew or had substantial certainty that its conduct was invading Plaintiff's use and enjoyment of her land. For example, Plaintiff testified that construction lights were placed near her home on the side of her bedroom and ran twenty-four hours a day for approximately eight weeks. (*See* Tiongco Dep. 43:18-20, 82:16-84:9). She further testified that these lights would illuminate her entire home and prevented her from sleeping. (*See id.* at 54:17-19, 82:17-19.) Additionally, Plaintiff testified that the sounds emanating from the nearby drilling site were so extreme that they would at times rise to the level of a "jet engine." (*Id.* at 79:8-10.) Defendant has produced no evidence demonstrating that Plaintiff did not in fact experience these types of harms or that the severity is exaggerated. Due to the patently invasive nature of some of the uncontroverted conduct that Plaintiff testified to, the Court finds that a genuine issue of material fact exists concerning whether Defendant, although not acting with the purpose to invade, nevertheless knew or was substantially certain that its conduct was in fact significantly interfering with Plaintiff's use and enjoyment of her land. It will ultimately be for a jury to decide whether Defendant acted with the requisite level of intent to be liable for an intentional private nuisance, *see Watts v. Univ. of Del.*, 622 F.2d 47, 52 (3d Cir. 1980) (quoting *In re Yarn Processing Patent Validity Litig.*, 498 F.2d 271, 288 (5th Cir. 1974) ("[I]ssues involving state of mind and intent are not well suited to disposition by summary judgment, since much depends upon the credibility of witnesses testifying as to their own states of mind, and assessing credibility is a delicate matter best left to the fact finder.")), but at this stage Plaintiff has produced sufficient evidence to survive summary

judgment on this claim.

Accordingly, because Defendant has not demonstrated that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law, the Court will deny Defendant's Motion for Summary Judgment with respect to Plaintiff's intentional private nuisance claim.

**D. Plaintiff's Negligence Claim**

Plaintiff has expressly acknowledged that she is no longer pursuing the negligence claim contained in Count II of her Complaint. (*See* Pl.'s Br. in Opp'n 2, Doc. 27.) The Court will therefore grant Defendant's Motion for Summary Judgment with respect to this claim.

**E. Relief Sought By Plaintiff**

Finally, the Court notes that Plaintiff has also expressly acknowledged that she is no longer pursuing injunctive relief, damages for the ill health of her alpacas, or damages for the physical damage to her property. (*See* Pl.'s Br. in Opp'n 2, Doc. 27.) Consequently, the relief Plaintiff may seek at trial for the alleged intentional private nuisance will not include injunctive relief or either form of the aforementioned damages.

### III. Conclusion

For the above stated reasons, Defendant's Motion for Summary Judgment will be DENIED with respect to Plaintiff's private nuisance claim and will be GRANTED with respect to Plaintiff's negligence claim. Plaintiff's request for a permanent injunction will be DENIED as moot.

An appropriate order follows.

October 14, 2016  /s/ A. Richard Caputo
Date   A. Richard Caputo
   United States District Judge